The next case for argument is 22-187, Gumpenberger v. McDonough. Good morning, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Alan Gumpenberger. Just as a preliminary matter, Your Honor, and to be sure that the Court understands the circumstances, Mr. Gumpenberger is what's called an accredited representative. He is accredited by the VA as a non-attorney practitioner. The statute applies to both non-attorney representatives as well as attorneys. So I may from time to time refer to attorney fees. He's actually receiving fees for the services rendered as a representative. And do the statutory provisions or the regulatory provisions refer to attorney fees, or do they just call them fees for the reasons you raised? It doesn't really matter. I don't think they refer to them as attorney fees anywhere, just as fees. In this case, Your Honor, we're dealing only with a question of statutory interpretation. The lower court in this case relied upon reading into the statutory provisions a requirement that the triggering event of an NOD must be considered based upon the statutory criteria for what constitutes an NOD. It is our view that the Veterans Court erred and relied upon a misinterpretation by reading into the statute language that is not there. Can I ask you a question, just a clarifying question? Is the emphasis on the meaning of the term the case? No, Your Honor. I believe it's only based upon the question of the triggering event, in this case in the second version of this statute, where the congress changed the triggering event from a first final board decision to a notice of disagreement, whether or not identifying that triggering event imposed some obligation on either the secretary or the court in determining entitlement to the receipt or payment of fees to the representative to inquire as to what the scope was of that particular document. As I understand it, if no notice of disagreement has been yet filed, then we all agree no fees will be awarded prior to that time. Absolutely. That's not an issue in this case. So what we have to look at is your view of construing something, some of the statutory language, and if so, what language is that that we're construing? Well, Your Honor, I believe you're reviewing the Veterans Court decision to expand the language of the statute to include the statutory provisions which define a notice of disagreement and how a notice of disagreement is to be understood under VA regulation. The Congress only referred to the document, the triggering event, as this court referred to it in Military Veterans Advocacy case at 7F4 at 1110 and 1135. The nature of the inquiry is whether or not the Veterans Court exceeded the plain meaning of the statute by going into, if you will, the definition of or the scope of a notice of disagreement as a determinative disposition as to whether there's entitlement to fees. You said we're only doing a statutory interpretation. So is that section 5904C1? That's correct, Your Honor. And what exactly do you think that we should interpret it as being? I believe that you should follow this court's precedent in MVA. That's the Military Veterans Advocacy case. It was a rulemaking challenge. In that case, this court found that what Congress did in 5104C was to identify triggering events that would be the event that before which you could not charge a fee and after which you could charge a fee. In the original version, it was a first final board decision. In the version that's at issue in this case, it was the filing of a notice of disagreement. There is no factual dispute in this matter that a notice of disagreement was filed. What the Veterans Court did was to go beyond the filing of the notice of disagreement because the board had relied upon the fact that the agency was the initiating reason for the eventual grant of past due benefits. That's not at all what Congress discussed when they created 5904C1. I guess I'm not really following. The statute says fees may not be charged before the date on which a notice of disagreement is filed. That's correct. The notice of disagreement here involved TDMU. Our position is the basis of that notice of disagreement is not relevant. That's what the court below did by relying upon how a notice of disagreement is defined. Is it your view that they misread the statute because in your view, this notice of disagreement thing does not mean that any services provided to matters on which a notice of disagreement was never filed still make you eligible for fees? Yes, Your Honor, because the representative's responsibility once engaged by a claimant is to determine all benefits to which the veteran was entitled to. The veteran was seeking an increase in his TBI and entitlement to a TDIU rating. But the statute says you can't get fees for services provided before the date on which the notice of disagreement is filed. He is not seeking that. What happened happened after the notice of disagreement was filed. But the services provided with respect to the TBI were before the notice of disagreement was filed. If there were any services here provided with respect to TBI, do you contend there were any services that Mr. Guppenberger provided to Mr. Valadez with respect to TBI? Not before, Your Honor. Or even after? Well, afterwards, because he filed a notice of disagreement asserting that the increase in the TBI should have included a TDIU rating. The Veterans Court... Wait, Mr. Guppenberger filed such a notice? Mr. Guppenberger filed that notice of disagreement on behalf of Mr. Valadez. Right, but it didn't say anything about TBI, did it? No, it did not, Your Honor, and I'm saying... So is it your view that we should read the statute that the increase in the TBI stuff happened after the notice of disagreement? Well, he didn't get an increase, Your Honor, he got an earlier effective date. What happened was... Before? No, after. They made the grant and assigned an effective date. At that point, a notice of disagreement was filed... On the TDIU? In order to get additional compensation. The fact that the additional compensation came by means of a later conclusion by the agency that upon a special review, they determined that this effective date should have gone back a number of years earlier. That was the source of the payment of past due benefits. There is no reference in 5904C to the source of or the reason for the award of past due benefits. So your view, to be clear, is once the agent or attorney files the notice of decision, anything beneficial that happens for the veteran after that point gives rise to a 20% claim for fees by the agent, even if it wasn't part of what led to the benefits increasing, and even if no services whatsoever were provided by the agent. No, Your Honor, I'm not going that far. He did provide services because in pursuing the issue of entitlement to additional compensation, during the time in which he was performing services on the issue of entitlement to additional compensation, he received additional compensation. Mr. Gukenberger, the agent only provided services seeking TDIU, correct? That's correct, Your Honor. And there was no additional, the client didn't get TDIU. There were no increased benefits achieved on the TDIU. And that's why I'm asking this court to focus on what Congress wrote. I just need clarification. It's on a minor point of fact, but I really misread something, if you're right. I thought when whatever happened outside of the notice of disagreement, I thought he got an increase in the TDI from 70% to 100%. The 100% was based upon the TDIU. You said it was an effective date. The change that happened that we're fighting over here, there's a dispute here in terms of what happened down below to his TBI rating. I thought what happened down below was based on re-evaluation and the re-examination. He got an increase from 70% to 100%. I didn't read the last stuff that happened in 2016 as being an effective date change. The agency increased the scheduler rating from 70% to 100% in lieu of assigning the TDIU rating. But it's based on a new examination. That's correct. That occurred only within the VA, right? Not as a result of the NOD or anything that followed or resulted from the NOD. I think that's a pretty basic question. The record reflects that. Yes, Your Honor. But the inquiry made by the Veterans Court was to examine the nature of the NOD to determine under the statutory definition of an NOD. I understand. I'm just asking you a factual question. Yes, Your Honor. I can't say because I do not recall clearly off the top of my head whether or not that was in fact the case. Let me just... The fee agreement was entered into in 2010. The application was submitted at the same time that the notice of disagreement... The claim was made after the agreement went into effect and then a rating decision was issued denying TDIU. That decision was in 2013. Then the notice of disagreement happened in May of 2013. The later grant, I believe it's in 2016. Let me just double check. Yes. I'm just asking whether the award of 100% disability rating for TBI was based on the VA's own internal review. That's what my question was. Whether this was something that just occurred, there was additional new review that was done within the VA only. Of a wide class of TBI claimants, I think, right? Yes. But that issue doesn't go to rating. But the answer is yes, right? I'm looking at the appendix 116 under evidence that there was an examination initiated by the VA on April 16, 2016. That was the evidence upon which the scheduler rating was assigned. So the answer to Judge So is yes. No. The answer is no because that wasn't something that happened before the NOD. I didn't ask that. Oh, I'm sorry. I thought that's what you were asking. I didn't ask that. I simply wanted to know whether the increase for the TBI was a result of whether that occurred within the VA. That's all. Oh, yeah. I'm sorry. Of course it did within the VA. I apologize, Your Honor. I was not attempting to be obtuse. All right. You're almost done. Let's do your rebuttal time. Thank you, Your Honor. Good morning and may it please the Court. Mr. Gumpenberger provided no services in connection with the benefits awarded to the veteran in this case. The VA did something of its own accord in reconsidering the veteran's entitlement to a higher TBI rating. Agents can only recover fees when their services relate to the case in which the notice of disagreement was filed. That kind of makes sense to me, but how do you map that onto the statute here? It doesn't really say that. Your Honor, we map that onto the statute by looking at this Court's precedent. The Jackson case specifically read the language of disagreement filed with respect to the case, and in that case no evidence of unemployability had been submitted before the Board, so the increased disability claim didn't include TBIU. There were two different claim streams, two different evidence streams in Jackson, and in that case this Court read specifically that notice of disagreement with respect to the case has to do with a specific claim that was raised by either the agent or by the veteran. So that's how you read it. It comes from both this Court's precedent in Jackson as well as just reading the statute by its terms. The term notice of disagreement is a term of art, and you read that in relation to the case, so reading notice of disagreement along with the case is how you assist the reading of that. Are there other provisions in the statute that talk about limiting the fee to a reasonable amount in light of the work done? Your Honor, in this case, I'm not aware of... We weren't looking at other provisions of the statute in terms of limiting. We are looking specifically at how notice of disagreement impacts the language of the case in this statute, and the terms of this statute are what are important and what's relevant, and that was interpreted in Jackson specifically. It was the predecessor statute, but it was still the language of 590.04. So you read it specifically just in this statute. We don't need to look to other interpretations of the case. We can look to the other... I'm just wondering, for example, there's different parts of this statute, 590.04, that refers to ordering a reduction if a fee is excessive or unreasonable. I was just wondering if that was part of the argument at all. No, Your Honor. We would rest it on the language both in notice of disagreement and in the case, which is why both the lower court and why we agree with the lower court looking at both 2201 and the regulatory principle, 7105. So those both help interpreting the notice of disagreement language, but we don't need to look to other parts for when fees come in. We're specifically interpreting this with relation to notice of disagreement. I may not be understanding TDIU well enough, and I'm not talking about this case because he already, when they filed the NOD, he already had 70% for the TDI. Yes. But couldn't there be a circumstance where the evidence for the TDIU claim would also implicate an increase in the scheduler rating? For example, where the rating given before the NOD was under the threshold for TDIU. So if you got the increase even below with the RO, that could affect the TDIU rating, right? So it depends on whether or not evidence of unemployability was raised. The touchstone of TDIU is both a disability related to it, but evidence of unemployability. In this case, the court or the veterans, the board, did not find specifically any evidence of unemployability. In fact, found that Mr. Valadez was employable. So the reason why his TDIU was denied in the first instance was because he was employable, and why they would file the notice of disagreement on that. But the touchstone would be unemployability. So there could be situations. There's some predicate in terms of the scheduler rating for TDIU. You have a 20% rating or something. Correct. Yes, you wouldn't reach that issue. So what's the threshold? The threshold would be 100% unemployability for TDIU. Does this appeal require us to define, for purposes of statute, the meaning of the case? And if so, do we look to the definition we gave in Carpenter, or you say we should go to Jackson, it looks like? Is there a difference? There's no difference, Your Honor. We would use Jackson for the definition of the case, specifically to interpret in terms of notice of disagreement with respect to the case. The Carpenter case, the reason why that's different is because that dealt with an earlier effective date, so it was from the same claim stream, the same evidence. So that's why, in that case, that was still part of the same case. So Jackson is not in any way overturning or undoing what Carpenter did. It is reading the case within what the court had already done in Carpenter. So do we have to adopt a definition in order to resolve this appeal, adopt a definition of the case? No, Your Honor. This court can simply rest on its own precedent in how the case has been interpreted before in Jackson. And military veterans, which my colleague cited, does not displace the understanding of what the case meant in Jackson. So you would just have us reiterate that the definition of the case for purposes of this version of this statute can be found in Jackson? Yes, correct, Your Honor. And he spent a lot of time in his freedom and otherwise talking about military veterans. So why do you think he made an inclusive statement that it doesn't dislodge Jackson? Yes, absolutely. Military veterans doesn't dislodge Jackson because it plays in the same space as Jackson in terms of interpreting what the case is. It never says that the case is anything but what happened in Jackson. It doesn't cite Jackson, but Jackson sets out what the case means, and military veterans was not en banc. It didn't undo what happened in Jackson. There was no decision specifically stating, we are reinterpreting what the case means. It was playing in the same field in interpreting what this statutory provision meant. So that's why military veterans wouldn't dislodge anything because of the fact that there was nothing stated in that case that said we are redoing what Jackson said, we're reiterating, we're overturning, et cetera. That was just a three-digit code. It was not en banc. So if we apply the definition of the case from Jackson here, it was at least possible, this is meant to be a question, but tell me where you disagree, it's at least possible that the TBI claim as well as the TDIU claim could have been part of the case at the notice of disagreement stage and thereafter. It could have been. Yes, if he filed a notice of disagreement, but in this case specifically in 2013, he filed the notice of disagreement that was specifically on a psychological disorder and on TDIU. And not TBI. Correct. TBI became final a year later. That was never appealed, and that's where I'm at. But there is nothing in the definition of Jackson that precluded him from including the TBI claim in the NOD, and then if things played out the same way as they did, he may have a valid argument that Mr. Gruberberger is entitled to fees, correct? Yes, Your Honor. If he had included in the notice of disagreement, actually included the TBI claim, then he would have an argument, but that's a different case because he would have... Do you understand there to have been a strategic reason why one would not want to appeal both the TBI and the TDIU, or is that just... I... Perhaps that would just have been Mr. Gruberberger's litigation decision. Perhaps he thought there was a better chance of getting a higher rating with TDIU because of the fact that he only got... Mr. Valadez only had 70% on TBI. Perhaps he thought he wasn't going to get any more on that, but I can't really speak to his litigation decision beyond the fact that he probably looked at it and decided, and I think that's really important in this case. Mr. Gruberberger specifically decided I'm not going to appeal the TBI decision, and Mr. Valadez was the one who submitted to the VA when the VA sent the letter to Esfante asking, we've had this re-evaluation, we would like to re-evaluate these TBI claims. Would this case be different if, in fact, this attorney was all over it, back at the R.O., having filed an NOB just on the TDIU, if he was still on a routine basis, you know, jamming the R.O. and the VA and saying, you should provide new evaluation for my client, Yamada, and he was really intimately involved in the VA's decision to re-evaluate. No, Your Honor, because the operative language is at the time a notice of disagreement had to be filed. In fact, in the Jackson case, what happened was the attorney agent in that case talked to the VA, and then he said, hey, I think that maybe a TDIU claim might be a good idea here. The VA decided, okay, we will give him TDIU. Then this court determined that, well, he didn't actually file a notice of disagreement on the TDIU claim, so he could not receive the benefits for that. This would be the same scenario. Even if he wasn't the one who submitted the letter to the VA, but even if Mr. Gumpenberger had submitted the letter, he still wouldn't have filed a notice of disagreement, so it still wouldn't trigger the operative language in this statute. But in terms of the amount of the fees that are awarded, does that include pre-NOD time and effort incurred? Just in terms of when you're computing the time. I understand you're saying these are threshold things for whether you're entitled to fees. But if you're entitled to fees, can you claw back the fees to the pre-NOD activity that the attorney or the representative engaged in? Just curious. They're not entitled to anything prior to the notice of disagreement, right? No, no. And it's just a straight-up 20%? Yes, correct. Yes. So from my understanding is if it related to the notice of disagreement, it was services provided in relation to the notice of disagreement, they would receive the fee. And Mr. Carpenter's reply brief has a three-page block quote of a Rice decision from the Veterans Court. If we're going to even consider that argument, what's your response to it? My first response would be that it is a pre-Jackson case so Jackson is also of this court. That's just a Veterans Court decision. So just on principle, the Rice case is not controlling precedent. It's pre-Jackson. Also, in that case, there was an underlying disability rating, underlying entitlement to TDIU. So there's a difference there. The veteran had submitted evidence of unemployability. There was, again, here in this case, the board did not find any evidence of unemployability. So the touchstone here is to go back again to the difference between actually having evidence of unemployability and not having it. So that, Your Honor, is why Rice is fully distinguishable. This court doesn't need to rely on Rice to make its decision. Thank you. If there are no further questions, thank you, Your Honor. We still have two minutes, everybody. Let's start with Rice. Rice deals with the legal proposition that a claim for increase includes a claim for TDIU. So when the TDIU issue was appealed, he was appealing the rating or the rate of compensation. The fact that the compensation was increased on a scheduler basis is indistinguishable under the holding in Rice because both seek a total rate of compensation. Furthermore, you have to look at the rating criteria for a 100% scheduler rating. A rating criteria for a 100% scheduler rating is based upon a total impairment of earning capacity. But what about Jackson? Jackson, Your Honor, was a case in which the attorney had done what was representing before the agency on another matter and then filed the TDIU Act. In this case, the TDIU Act was part of the notice of disagreement that was filed that was the basis for his right to charge and receive a fee. And when the decision was made that he was entitled that Mr. Valdez was entitled to a total rating on a scheduler basis, that under Rice is a distinction without a difference because it's all part of his claim for increased compensation. And if you look at the 8940, and it's in the record at Appendix 35, the title is Veterans Application for Increased Compensation. Now, it's based upon unemployability, but that is not the only basis. And the secretary had the alternative choice to either grant TDIU based upon the increase in severity or to grant it on a scheduler basis. The result was the same. The amount of past due benefits would have been the same. And therefore, Mr. Gumpenberger should have been entitled to a fee without an inquiry about the nature of the NOD. Thank you. Thank you very much.